IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

ADVANCED TECHNOLOGY BUILDING
SOLUTIONS, LLC, et al.                                                                      PLAINTIFFS

v.                                                                    CIVIL ACTION NO. 3:12cv389-DPJ-FKB

CITY OF JACKSON, MISSISSIPPI, et al.                                                DEFENDANTS

ORDER

This § 1983 case is before the Court on motions to dismiss [27, 50, 52] filed by Defendants City of Jackson, Mississippi, and Harvey Johnson, Jr., and joined in by the remaining defendants [57]. For the reasons that follow, the motions to dismiss will be granted in part but otherwise denied.

I.      Facts and Procedural History

Plaintiff Don Hewitt, an African-American male, owns Plaintiff Advanced Technology Building Solutions, LLC ("ATBS"), a Mississippi real-estate-development company. Plaintiffs allege generally that the City of Jackson, Mississippi, at the behest of Mayor Harvey Johnson, Jr., and through the Jackson Redevelopment Authority ("JRA"), thwarted ATBS's efforts to work on three separate projects in downtown Jackson, violating Plaintiffs' constitutional rights in the process.

   A.      Block C

Plaintiffs allege that ATBS submitted a proposal to develop a parcel of property owned by JRA known as Block C in May 2009. ATBS's proposal, which JRA accepted, "consisted of market-rate housing, retail, and parking." Am. Compl. [48] ¶ 16. In March 2010, JRA "authorized the transfer of Block 'C' to ATBS . . . ." Id. ¶ 17. But because Mayor Johnson "was

not in favor of having residential units built on Block C," JRA later decided "to reject all proposals of development" on Block C.  Am. Compl. [48] Ex. B, Aug. 5, 2010 Letter.

B.      Deposit Guaranty Project

In March 2011, ATBS entered into an Option Agreement with the seller of the Deposit Guaranty National Bank building in downtown Jackson.  ATBS hoped to purchase the property and convert it "into a 120 key hotel, 33 apartments and 32,000 sq. ft. of retail space."  Am. Compl. [48] ¶ 27.  JRA initially "offer[ed] its full and unquestionable support of the conversion of [the Deposit Guaranty building] to a mixed use development."  Am. Compl. [48] Ex. C, May 6, 2011 Letter.  Later, JRA's Executive Director, Jason Brookins, encouraged ATBS to "consider multi-family housing as the dominant use of the property" in light of the City of Jackson's plan to seek proposals for a Convention Center Hotel.  Am. Compl. [48] ¶ 29.  Brookins also "persuaded" ATBS to "pursue project funding" for the Deposit Guaranty building project "through JRA."  *Id.* ¶ 31.  ATBS thereafter requested a $5,000,000 loan to cover the acquisition of the Deposit Guaranty building.  ATBS made a formal presentation to the JRA Projects Committee in support of its loan request and, in November 2011, the Projects Committee "recommended that the project be approved for funding by including it in its Urban Renewal Zone Amendment Number 10."  *Id.* ¶ 35.  Amendment 10 stated that it was "anticipated that" JRA "will issue obligations to provide funds to defray all or part of the costs of acquiring, improving, repairing, rehabilitating, redeveloping and/or developing all or part of the Deposit Guaranty National Bank Building Property . . . and/or to provide funds to make a loan to defray all or part of such costs . . . ."  Am. Compl. [48] Ex. D, City Council Order at 20.  Amendment 10 did not reference ATBS or Hewitt by name.

When the Deposit Guaranty building project was presented to JRA's full board, "ATBS immediately received opposition from [board member] Beau Whittington, who appeared to be prejudiced to a black developer." Am. Compl. [48] ¶ 36. Nevertheless, in December 2011, JRA and ATBS entered into a Memorandum of Understanding whereby JRA proposed to "use its best efforts to pursue issuance of . . . Bonds," the proceeds of which "will be used to fund [a] Loan" to ATBS. Am. Compl. [48] Ex. E, Memorandum of Understanding at 2–3. Thereafter, JRA's Planning Board approved Amendment 10 to the City's Urban Renewal Plan in January 2012, and in February 2012, the Jackson City Council approved Amendment 10.

Ultimately, ATBS needed the JRA Finance Committee to approve its loan request to move forward with the Deposit Guaranty building project. JRA attorney Tony Gaylor "advised ATBS that the ATBS [funding] proposal would be viewed differently by JRA, . . . implying that the . . . Deposit Guaranty . . . building project would be highly scrutinized due to ATBS being a black-owned private enterprise." Am. Compl. [48] ¶ 93. At a March 21, 2012 Finance Committee meeting, just ten days before ATBS's option to purchase the Deposit Guaranty building was set to expire, "Brookins announced that he had met with [Mayor] Johnson . . . the night before and that Mr. Johnson stated that 'the rules of the game have changed' and that the Mayor did not want to finance the ATBS project." *Id.* ¶ 106. Absent JRA financing, ATBS was unable to purchase the Deposit Guaranty building.

  C. Convention Center

At the same time ATBS was working toward the possible purchase and redevelopment of the Deposit Guaranty building, ATBS became involved in a bidding process for another JRA project. On November 23, 2011, JRA sought proposals for a Convention Center Hotel project.

3

Plaintiffs allege that, before the bidding process concluded, "an Atlanta financial consultant hired to advise the City" indicated "[i]n a statement to the media" that a deal on the Convention Center Hotel project between JRA and Transcontinental Realty Investors ("TCI") was "all but done." Am. Compl. ¶ 43.  ATBS reviewed TCI's proposal, which had an estimated cost of $90,000,000, and decided to submit its own bid.  To that end, ATBS formed a joint venture with Journeyman Austin Holdings, a developer of convention center hotels, to compete for the Convention Center Hotel project.  When the period for accepting bids expired, only TCI and ATBS/Journeyman had submitted bids for the project.  ATBS alleges that its bid "was $23,000,000 less than TCI's proposal" and "included a 300-space parking garage and 20,000 sq. ft. of retail space," neither of which were included in TCI's proposal.  *Id.* ¶ 56.  In the end, "JRA decided to reject both proposals, stating that there were problems and deficiencies with both responses to the [Request for Proposals]." *Id.* ¶ 58.

Feeling aggrieved by the outcome of the Block C, Deposit Guaranty building, and Convention Center Hotel projects, ATBS and Hewitt filed this lawsuit on June 6, 2012 against the City of Jackson; Mayor Johnson, in his official and individual capacities; JRA; Brookins, in his official capacity; JRA Chairman Ronnie Crudup, in his official capacity; and JRA Commissioners Brian Fenelon and H.A. "Beau" Whittington, Jr., in their official and individual capacities.  Compl. [1].  The City and Mayor Johnson filed a Motion for More Definite Statement [18], which Magistrate Judge F. Keith Ball granted on September 28, 2012 [24]. Plaintiffs then filed a Supplemental Pleading on October 12, 2012 [25], and the City and Mayor Johnson filed their first Motion to Dismiss [27].  Plaintiffs sought [38] and were granted [47] leave to amend the Complaint, and Plaintiffs filed the now-operative Amended Complaint [48]

4

on February 5, 2013. In the Amended Complaint, Plaintiffs assert § 1983 claims for violations of their substantive due process, equal protection, and First Amendment rights; conspiracy claims under § 1985 and § 1986; and state-law tort claims for gross negligence, tortious breach of contract, and tortious interference. The City [50] and Mayor [52] moved to dismiss the Amended Complaint, and the remaining defendants filed a joinder in the motions [57]. Plaintiffs responded to the motions to dismiss [59], and the time for rebuttals has now expired without further submissions from Defendants.

II.     Standard

In considering a motion under Rule 12(b)(6), the "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To overcome a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations and footnote omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

The Supreme Court's examination of the issue in *Iqbal* provides a framework for examining the sufficiency of a complaint. First, the district court may "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id*. at 679. Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*.

III.     Analysis

The original Motion to Dismiss [27] focused on the sufficiency of the original Complaint and Supplemental Pleading. Those submissions were supplanted by the now-operative Amended Complaint [48], so the original motion is moot. The Court will focus on the arguments raised in the Motions to Dismiss the Amended Complaint [50, 52].

    A.     Fourteenth Amendment Substantive-Due-Process Claim

Plaintiffs base their substantive-due-process claim on JRA's decision not to finance ATBS's purchase of the Deposit Guaranty building. *See* Am. Compl. [48] Count I, ¶¶ 110–24.[1] A substantive-due-process claim will lie where a state "arbitrarily abuses its power to deprive individuals of constitutionally protected rights." *Simi Inv. Co. v. Harris Cnty.*, 236 F.3d 240, 249 (5th Cir. 2000).

> A plaintiff who brings a substantive due process claim[] must satisfy two considerations. "First, he must allege a deprivation of a constitutionally protected right." *Mikeska v. City of Galveston*, 451 F.3d 376, 379 (5th Cir. 2006). Second, he must demonstrate that the government action is not "rationally related to a legitimate governmental interest." *Id.*

---

[1]The Amended Complaint contains two sets of paragraphs numbered 110 through 123. Count I begins with the second paragraph numbered 110.

*Bush v. City of Gulfport*, 454 F. App'x 270, 275–76 (5th Cir. 2011).  Defendants argue that Plaintiffs' substantive-due-process claim fails for lack of a constitutionally-protected property or liberty interest.

      1.      Property Interest

A protected property interest arises when the plaintiff has "a legitimate claim to entitlement" rather than "a mere subjective expectancy."  *Vineyard Inv., LLC v. City of Madison*, 757 F. Supp. 2d 607, 613 (S.D. Miss. 2010) (Lee, J.) (citing *Skidmore v. Shamrock Indep. Sch. Dist*, 464 F.2d 605, 606 (5th Cir. 1972); *Perry v. Sindermann*, 408 U.S. 593 (1972)).  In this case, "Plaintiffs contend that the urban renewal rezoning, the revised urban renewal plan, and the Order adopted by the City of Jackson created a vested property right to Plaintiffs" in JRA funding for the acquisition of the Deposit Guaranty building.  Pls.' Mem. [59] at 13.  Plaintiffs assert that these actions and documents create a contract—or at least an implied contract—even though the funding was never finally approved.

A property interest can "be created by ordinance, or by an implied contract.  In either case, however, the sufficiency of the claim of entitlement must be decided by reference to state law."  *Bishop v. Wood*, 426 U.S. 341, 344 (1976).  And "in Mississippi, where the government authority has discretion in awarding a contract, the law does not recognize a protected property interest in such contract until it is actually awarded."  *Miss. Forum on Children & Families v. Miss. Dept. of Human Servs.*, 850 F. Supp. 2d 644, 648 (S.D. Miss. 2012) (Lee, J.) (citing *Nelson v. City of Horn Lake ex rel. Bd. of Aldermen*, 968 So. 2d 938, 944 (Miss. 2007); *Elec. Data Sys. Corp. v. Miss. Div. of Medicaid*, 853 So. 2d 1192, 1207 (Miss. 2003)).

Though Defendants clearly started the process of providing funding for the project, the documents and actions Plaintiffs rely upon were not final. For example, the Memorandum of Understanding with JRA specifically states that "[c]onsummation of any transaction will be dependent upon additional approvals from other parties including the Jackson City Council and the Mayor of the City of Jackson." Am. Compl. [48] Ex. E at 1. Likewise, the order adopted by the Jackson City Council merely stated that it was "anticipated that" obligations would be issued to provide funds for the Deposit Guaranty project. *Id*. Ex. D at 19–20. And the order neither references ATBS nor obligates JRA to fund the redevelopment of the Deposit Guaranty building. Finally, the Amended Complaint observes that the process fell apart before final approval by the JRA Finance Committee. Am. Compl. ¶¶ 93–106.

In sum, the documents relied upon by Plaintiffs did not award ATBS the governmental funding it sought. Thus, ATBS lacked a "legitimate claim of entitlement" to the funding. *Nelson*, 968 So. 2d at 944 (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972); *Shepard v. City of Batesville*, No. 2:04cv330-D-B, 2007 WL 108288, at *7 (N.D. Miss. Jan. 8, 2007)). Plaintiffs have not alleged a constitutionally-protected property interest.

        2.        Liberty Interest

The only liberty interest Plaintiffs clearly articulated is the "constitutionally protected liberty interest in pursuing a chosen occupation." *Stidham v. Tex. Comm'n on Private Sec.*, 418 F.3d 486, 491 (5th Cir. 2005) (citations omitted). But to state such a claim, "a person must allege that he was effectively prevented from practicing the profession." *Sanchez v. Cnty. of El Paso*, 486 F. App'x 455, 457 (5th Cir. 2012) (citing *Martin v. Mem'l Hosp. at Gulfport*, 130 F.3d 1143, 1148–49 (5th Cir. 1997)). So while Plaintiffs have a liberty interest in pursuing their

8

chosen occupation of real-estate development, Plaintiffs do not allege that Defendants deprived them of that interest.  Instead, they allege that Defendants prevented them from obtaining public funds to develop a particular project.  The facts alleged by Plaintiffs do not "state[] a plausible claim of the denial of a constitutionally protected liberty interest." *Sanchez*, 486 F. App'x at 457; *cf. Roth*, 408 U.S. at 575 ("It stretches the concept too far to suggest that a person is deprived of 'liberty' when he simply is not rehired in one job but remains as free as before to seek another." (citation omitted)).  The substantive-due-process claim will be dismissed.[2]

   B.   Fourteenth Amendment Equal Protection Claims

In the initial motions to dismiss, Defendants challenged the viability of Plaintiffs' equal-protection claims for insufficient pleading.  *See* Defs.' Mem. [28] at 20–21.  But Plaintiffs addressed the lack of factual depth in the Amended Complaint, and Defendants did not specifically move to dismiss the equal-protection claims in their motions to dismiss the Amended Complaint [50].  At best, Defendants argue that all § 1983 claims should be dismissed for failure

---

[2]Though the Court dismisses the substantive-due-process claim as it relates to the Deposit Guaranty project, it is not clear whether a separate substantive-due-process claim was pleaded as to Block C, and if so, whether it survives under Rule 12(b)(6).  In the fact section of the Amended Complaint, Plaintiffs claim that they were awarded the Block C project only to have it pulled in violation of their due-process rights.  *See* Am. Compl. [48] at ¶¶ 17, 22.  But Plaintiffs failed to mention Block C in Count I—the only substantive-due-process count in the Amended Complaint.  And it is unclear whether Defendants interpreted the Amended Complaint as including a substantive-due-process claim as to Block C.  On the one hand, Defendants state in passing that no property right existed as to that project.  Defs.' Mem. [51] at 7.  But on the other hand Defendants never explained that position and never directly addressed a substantive-due-process claim as to Block C.  Plaintiffs were equally cursory in their response, arguing in the overview that a property interest does exist as to Block C but then failing to address the issue when discussing the motion to dismiss Count I.  Based on this record, the Court is not willing to say a substantive-due-process claim was ever pleaded as to Block C, or if it was, whether it should survive Defendants' motions.  The matter can be addressed at the Rule 56 stage if appropriate.

to plead a property or liberty interest.  *See* Defs.' Mem. [51] at 6 ("At the onset, in order for Plaintiffs to have any implicated claim, Plaintiffs must possess a constitutionally-protected property or liberty interest."). Though the argument has merit as to the substantive-due-process claim, "[n]o such deprivation of liberty or property is required for a violation of the Equal Protection Clause." *Brennan v. Stewart*, 834 F.2d 1248, 1257 (5th Cir. 1988). Accordingly, the Court finds that the equal-protection claims in Counts II and III should not be dismissed at the Rule 12(b)(6) stage.

    C.    First and Fourteenth Amendment Retaliation Claim

Count IV of the Amended Complaint is confusing. The claim is entitled "Retaliation as Violation of Plaintiffs' Equal Protection under the Fourteenth Amendment and Right to Free Speech under the First Amendment (Personal Vindictiveness) through 42 U.S.C. [§] 1983." Though Plaintiffs make reference to equal protection in this Count, the core averment—one that appears elsewhere in their Amended Complaint [48] and Response [59]—appears to allege a First Amendment retaliation claim. As Plaintiffs pleaded it, ATBS was denied financing for the Deposit Guaranty building project in retaliation for "Don Hewitt's constant criticism of the flawed, unfair bidding process and the excessive fees to the Mayor's political affiliates and consultants." Am. Compl. [48] ¶ 173. Defendants likewise interpret this count as asserting a First Amendment retaliation claim.[3]

---

[3] Plaintiffs seem to confuse Counts IV and V in their Response [59]. Thus, their legal analysis never directly addresses Count IV. Nevertheless, the Court does not interpret this as a waiver because the First Amendment retaliation claim is mentioned elsewhere in their Response. *See* Pls.' Resp. [59] at 20. It is also part of the conspiracy claim in Count V. The Court will therefore test the merits of Defendants' arguments.

Assuming that is the nature of this count, it is also unclear which First Amendment retaliation standard applies. First Amendment "cases form a 'spectrum' ranging from, at one end, cases involving 'government employees, whose close relationship with the government requires a balancing of important free speech and government interests' and, on the other end, cases involving 'ordinary citizens whose viewpoints on matters of public concern the government has no legitimate interest in repressing.'" *Kinney v. Weaver*, 367 F.3d 337, 358 (5th Cir. 2004) (citing *Bd. of Cnty. Comm'rs, Wabaunsee Cnty. v. Umbehr*, 518 U.S. 668, 680 (1996)).

When addressing claims by public employees or government contractors, the Court applies the test most recently articulated in *Garcetti v. Ceballos*, 547 U.S. 410 (2006); *see also Umbehr*, 518 U.S. at 684 (holding that government contractors are viewed like public employees). A different test applies to speech by "ordinary citizens." *See Kinney*, 367 F.3d at 360 (discussing difference between public employee and private citizen First Amendment retaliation claims).

In this case, Defendants argue their case under the public-employee standard without explaining why it should apply. Plaintiffs likewise offer no analysis of this issue. But because Defendants' motion would fail under either test, the Court will not delve deeper into the issue at this stage. Instead, this Order will track the Defendants' arguments under the public-employee test which adds several elements to the "ordinary citizens" test:

> To establish a constitutional claim for First Amendment retaliation, four elements must be shown: (1) that plaintiff "suffered an 'adverse employment decision'"; (2) that the plaintiff's "speech involved a 'matter of public concern'"; (3) that the plaintiff's "'interest in commenting on matters of public concern . . . outweighs

11

the [d]efendant's interest in promoting [workplace] efficiency'"; and (4) that the plaintiff's speech motivated the defendant's action.

Here, Defendants argue that the First Amendment retaliation claim must fail for four reasons: (1) lack of a property or liberty interest; (2) the speech was not a matter of public concern; (3) the Amended Complaint failed to precisely articulate when and how Plaintiffs exercised their free-speech rights; and (4) the Amended Complaint failed to adequately plead that the speech motivated the adverse actions. First, there is no property or liberty interest component to either First Amendment retaliation test. *See generally DePree v. Saunders*, 588 F.3d 282, 286–87 (5th Cir. 2009) (outlining public employee test); *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002) (outlining ordinary citizen test). Second, even assuming the "public interest" element applies, speech related to the bidding process for a $90 million government project easily satisfies it. Third, the Amended Complaint amply describes the protected speech. *See, e.g.*, Am. Compl. [48] ¶¶ 66, 72, 173. Finally, the averments of the Amended Complaint provide sufficient factual basis to support the causation prong. *Id.* at ¶¶ 174, 182. Accordingly, the First Amendment retaliation claim will not be dismissed.

D.   Conspiracy Claim

Plaintiffs allege that Fenelon, Whittington, and Mayor Johnson "conspired to discriminate" against Plaintiffs because Hewitt is African-American. Am. Compl. [48] ¶ 181. Defendants argue that Plaintiffs cannot succeed on this claim because "Plaintiffs do not possess any vested constitutionally-protected property or liberty rights of which the . . . Defendants could conspire to deprive Plaintiffs." Defs.' Mem. [51] at 14. The Court does not find this fact determinative of the conspiracy claim. Plaintiffs have alleged that three defendants entered into

an agreement to discriminate against Plaintiffs because of Hewitt's race in violation of the Equal Protection Clause.  This states a conspiracy claim under § 1985.  *See Bryant v. Military Dep't of Miss.*, 597 F.3d 678, 687 (5th Cir. 2010).  Because the claim does not appear to be asserted against the City, JRA, Brookins, or Crudup, the motion will be granted as to those defendants.

      E.      State-Law Tortious-Interference Claim

Finally, the City of Jackson Defendants move to dismiss the state-law tortious-interference claim.  Plaintiffs do not respond to this portion of the motion, and the Court deems the tortious-interference claim abandoned as to the City and Mayor Johnson.  *See Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2010).[4]

IV.     Conclusion

The Court has considered all the parties' arguments.  Those not addressed would not have changed the outcome.  For the foregoing reasons, Defendants' Motion to Dismiss [27] is deemed moot.  Defendants' Motions to Dismiss [50, 52] are granted as to Count I, the conspiracy claim against the City, JRA, Brookins, and Crudup (Count V), and the tortious-interference claim (Count VI(c)).  The motions are otherwise denied.

**SO ORDERED AND ADJUDGED** this the 22nd day of May, 2013.

                                      s/ *Daniel P. Jordan III*
                                      UNITED STATES DISTRICT JUDGE

---

[4] The tortious-interference claim is asserted against only the City and Mayor Johnson.  Am. Compl. [48] ¶¶ 198–99.  The state-law-gross-negligence and tortious breach-of-contract claims, on the other hand, are brought against just JRA.  Accordingly, that claim was not addressed in the motions filed by the City or Mayor Johnson.  Because JRA failed to separately move to have them dismissed, *id.* ¶¶ 192–97; *see* Joinder [57], those claims will go forward.