IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

ADVANCED TECHNOLOGY BUILDING
SOLUTIONS, LLC, et al.                                          PLAINTIFFS

v.                                              CAUSE NO. 3:12CV389-LG-JMR

CITY OF JACKSON, MISSISSIPPI, et al.                           DEFENDANTS

MEMORANDUM OPINION AND ORDER CONCERNING
THE DEFENDANTS' MOTIONS FOR SUMMARY
JUDGMENT AND MOTIONS TO STRIKE

**BEFORE THE COURT** are the Motion for Summary Judgment [125] filed

by Jason Brookins, Ronnie Crudup, Brian Fenelon, Jackson Redevelopment

Authority, and Beau Whittington, Jr. (hereinafter collectively referred to as "the

JRA defendants"), the Motion for Summary Judgment [127, 128] filed by the City of

Jackson, Mississippi, and Harvey Johnson, Jr. ("the City defendants"),[1] the Motion

to Strike Selected Exhibits [146] filed by the JRA defendants, the Motion to Strike

Portions of Don Hewitt's Affidavit [148] filed by the JRA defendants, and the

Motion to Strike Portions of Herbert J. Irvin's Affidavit [150] filed by the JRA

defendants.  After reviewing the submissions of the parties and the applicable law,

the Court finds that the defendants' Motions for Summary Judgment should be

granted as to the plaintiffs' substantive due process, equal protection, conspiracy,

---

[1] Although styled as a Motion for Summary Judgment, the City defendants'
Motion presents many arguments relating to the sufficiency of the plaintiffs'
Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6).  This Court has previously
addressed whether the plaintiffs have stated claims for relief in its Order [65]
entered on May 22, 2013.  As a result, it is not necessary for the Court to again
address the sufficiency of the pleadings in this opinion.

gross negligence, and tortious breach of contract claims, but denied as to the plaintiffs' First Amendment retaliation claim.  The Motions to Strike are moot.

### FACTS

Advanced Technology Building Solutions, LLC ("ATBS"), is a Mississippi real estate development company operated by Don Hewitt, an African-American male. (Defs.' Mot., Ex. A at 21-22, ECF No. 125-1).  Beginning in 2009, ATBS sought to develop three different parcels of real estate located in Jackson, Mississippi: Block C, the Deposit Guaranty building, and the Convention Center Hotel.  ATBS sought approval of these projects from the Jackson Redevelopment Authority ("JRA"), Jackson's governing board for all urban renewal projects.  ATBS applied for funding pursuant to Miss. Code. Ann. § 43-35-21, which permits municipalities to issue bonds financing urban renewal projects.  After the JRA rejected ATBS's applications, ATBS and Hewitt filed this lawsuit against the JRA, several members of the JRA board, the City of Jackson, and former Jackson Mayor Harvey Johnson, Jr., claiming violation of the constitutional rights of ATBS and Hewitt.

The claims included in ATBS and Hewitt's Amended Complaint originally included: a Fourteenth Amendment substantive due process claim, a Fourteenth Amendment equal protection claim based on political affiliation, a Fourteenth Amendment equal protection claim based on race, a First Amendment retaliation claim, and a conspiracy claim pursuant to 42 U.S.C. §1985 and §1986.  ATBS also asserted state law tort claims for gross negligence and tortious breach of contract against the JRA, and a tortious interference with contract claim against the City

defendants.

On May 22, 2013, Judge Daniel P. Jordan, III, entered an Order [65] dismissing the conspiracy claim as to the following defendants: JRA Chairman Ronnie Crudup, former JRA executive director Jason Brookins, the JRA, and the City. Judge Jordan also dismissed the substantive due process claim as to the Convention Center Hotel and Deposit Guaranty projects, but he did not reach the issue of whether a substantive due process claim was pled regarding the Block C project or the issue of whether such a claim should be dismissed. Furthermore, Judge Jordan dismissed the state law tortious interference with contract claim in its entirety. Subsequently, the parties agreed to the dismissal of all claims filed against the Mayor in his individual capacity. The case was transferred to the undersigned on October 24, 2013.

## DISCUSSION

A motion for summary judgment may be filed by any party asserting that there is no genuine issue of material fact and that the movant is entitled to prevail as a matter of law on any claim. Fed. R. Civ. P. 56. The movant bears the initial burden of identifying those portions of the pleadings and discovery on file, together with any affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the movant carries its burden, the burden shifts to the non-movant to show that summary judgment should not be granted. *Celotex Corp.*, 477 U.S. at 324-25. The non-movant may not rest upon mere allegations or denials in its pleadings but must set

forth specific facts showing the existence of a genuine issue for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986).

## I.  SUBSTANTIVE DUE PROCESS

The Court finds that the plaintiffs pled a substantive due process claim as to the Block C project.  While Block C was not specifically mentioned in the portion of the Amended Complaint included under the heading "Substantive Due Process," that portion of the Amended Complaint incorporated all prior allegations, including the plaintiffs' allegation that the JRA initially awarded the Block C project to ATBS but canceled the award at the urging of the Mayor.  (Am. Compl. at 8 (¶¶16-19), ECF No. 48).  The Amended Complaint also included the following allegations:

> JRA and Mayor Johnson violated the equal protection and due process rights of ATBS.  Further, ATBS lost its "property interest" and "liberty interest" to develop a project and perform work it was qualified to and selected to develop after having adhered to a statutorily-mandated public procurement process.

(*Id.* at 9 (¶22)).  Since the Amended Complaint includes a substantive due process claim regarding the Block C project that remains pending, the Court will consider whether the defendants are entitled to summary judgment as to that claim.

To demonstrate a substantive due process claim, a plaintiff must show that he suffered a deprivation of a liberty or property interest that was arbitrary or not rationally related to a legitimate governmental interest.  *Simi Inv. Co., Inc. v. Harris Cnty., Tex.*, 236 F.3d 240, 249 (5th Cir. 2000).  A property interest "rises to the level of a constitutionally protected interest" if the plaintiff has "a legitimate

-4-

claim of entitlement." *Nelson v. City of Horn Lake ex rel. Bd. of Aldermen*, 968 So.

2d 938, 944 (¶21) (Miss. 2007).  As Judge Jordan correctly held in his Order [65], "in

Mississippi, where the government authority has discretion in awarding a contract,

the law does not recognize a protected property interest in such contract until it is

actually awarded." *Advanced Tech. Bldg. Solutions, LLC v. City of Jackson, Miss.*,

No. 3:12cv389-DPJ-FKB, 2013 WL 2252104 at *4 (S.D. Miss. May 22, 2013)

(quoting *Miss. Forum on Children & Families v. Miss. Dep't of Human Servs.*, 850 F.

Supp. 2d 644, 648 (S.D. Miss. 2012)).

    The plaintiffs rely on the following testimony[2] of their transactional attorney,

Herbert J. Irvin, to support their substantive due process claim regarding the Block

C development:

> In August 2009, ATBS responded to a [Request for Redevelopment
> Proposal (RFP)] published by the [JRA] requesting proposals to
> develop a parcel owned by JRA known as Block "C."  ATBS was the
> only entity to submit a bid to develop Block "C."  In its response, ATBS
> proposed to develop the site as a mixed-use community consisting of
> market-rate housing, retail, and parking.  At a board meeting, JRA
> gave ATBS its approval of the mixed-use concept and declared that
> JRA had accepted the ATBS mixed-use proposal . . . .  After the design
> work for [Block "C"] was finished, ATBS and M+A Architects made a
> presentation to a joint meeting of JRA's Projects Committee and its
> Finance Committee.  At its March 2010 meeting, JRA's board
> authorized the transfer of Block "C" to ATBS as specified in the RFP
> response.  The board then directed its attorneys to meet with me to
> draft a property acquisition [memorandum of understanding] that
> would detail the terms of the transfer of the property to ATBS . . . .  At

---

[2] The JRA defendants object to some of Irvin's testimony related to the Block
C project, but it is not necessary for the Court to determine whether this testimony
is admissible, because the testimony does not create a genuine issue of material
fact.

the request of JRA's then-Executive Director Jason Brookins, ATBS
arranged an August 1, 2010 meeting with Mayor Harvey Johnson, Jr.,
to discuss its development plan for Block "C." At this meeting, Mayor
Johnson told Brookins, ATBS and several of the mayor's department
heads, that "for the next two years and nine months or as long as I am
mayor, this project is not going to happen. When people drive into this
city, I don't want them seeing underwear and clothing being on cloth
[sic] lines or on balconies of this building!" On August 7, 2010, ATBS
received a letter . . . from . . . Brookins that stated . . . JRA was going
to reject all proposals of development of this site and publish another
RFP for a Class A office building.

(Pl.'s Resp., Ex. A at ¶¶ 3-13, ECF No. 139-1). While Irvin claims that the JRA

initially awarded the Block C contract to ATBS, the plaintiffs have not identified

any mention of such an award in the JRA's minutes. The Mississippi Supreme

Court has held that public boards can only speak through their minutes. *Lange v.*

*City of Batesville*, 972 So. 2d 11, 18 (¶¶9-10) (Miss. Ct. App. 2008) (citing *Thompson*

*v. Jones Cnty. Cmty. Hosp.*, 352 So. 2d 795, 796 (Miss. 1977)). As a result, any

contract awarded by a public board must be contained, at least in part, in the

board's minutes. *Id.* In the absence of evidence in the minutes that the contract

was awarded to ATBS, the plaintiffs had no property or liberty interest in the

project, and the substantive due process claim must be dismissed.

## II. EQUAL PROTECTION

The plaintiffs allege that their right to equal protection was violated based on

their race and political affiliation. The Equal Protection Clause "commands that no

State shall 'deny to any person within its jurisdiction the equal protection of the

laws,' which is essentially a direction that all persons similarly situated should be

treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439

(1985).  "The Equal Protection Clause reaches only state actors, but § 1983 equal

protection claims may be brought against individuals as well as municipalities and

certain other state entities." *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246,

257 (2009).

"To state a claim of . . . discrimination under the Equal Protection Clause and

section 1983, the plaintiff 'must allege and prove that [she] received treatment

different from that received by similarly situated individuals and that the unequal

treatment stemmed from a discriminatory intent.'" *Bowlby v. City of Aberdeen,

Miss.*, 681 F.3d 215, 227 (5th Cir. 2012) (quoting *Priester v. Lowndes Cnty.*, 354

F.3d 414, 424 (5th Cir. 2004)); *see also Coleman v. Houston Indep. Sch. Dist.*, 113

F.3d 528, 533 (5th Cir. 1997) ("In order to state a claim of racial discrimination

under the Equal Protection Clause and § 1983, a plaintiff must demonstrate that

the governmental official was motivated by intentional discrimination on the basis

of race."). "'[D]isparate impact alone' is not enough; rather, a 'party who wishes to

make out an Equal Protection claim must prove the existence of purposeful

discrimination motivating the state action which caused the complained-of injury.'"

*Clayton ex rel. Hamilton v. Tate Cnty. Sch. Dist.*, No. 13-60608, 2014 WL 1202515 at

*3 (5th Cir. Mar. 25, 2014).  Furthermore, "[c]onclusory assertions that [a plaintiff]

was treated differently than other similarly situated [persons] are insufficient to

state an equal protection claim." *Clark v. Owens*, No. 371 F. App'x 553, 554 (5th

Cir. Mar. 31, 2010).  "Discriminatory purpose in an equal protection context implies

that the decisionmaker selected a particular course of action at least in part because of, and not simply in spite of, the adverse impact it would have on an identifiable group." *Woods v. Edwards*, 51 F. 3d 577, 580 (5th Cir. 1995).

A plaintiff may prove discriminatory intent through either direct evidence or circumstantial evidence. *Gaalla v. Brown*, No. 10-41332, 460 F. App'x 469, 479 (5th Cir. Feb. 16, 2012) (citing *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 992 (5th Cir. 2005)). "Direct evidence [of discriminatory intent] is evidence which, if believed, proves the fact without inference or presumption." *Id.*

In the present case, the plaintiffs appear to claim that a statement made by Matt Thomas, Chairman of the JRA Projects Committee, is direct evidence of discrimination.  Herbert J. Irvin has testified by affidavit that Thomas said "that JRA might discriminate against [the plaintiffs] because the board and the Mayor held a general perception that black developers were not capable of developing anything beyond a house or two." (Pls.' Resp., Ex. A at 12 (¶70), ECF No. 139-1). Irvin also claims that Greg Green, one of the members of the JRA's Finance Committee, stated that the JRA board's conduct toward the plaintiffs reminded him of "a very negative place in our history." (*Id.* at 20 (¶104)).  Furthermore, Irvin alleges that the JRA's special counsel sent an email to the plaintiffs that stated, "Let me reiterate that there is a higher level of scrutiny placed on you guys' project so it's imperative that it be top flight." (*Id.* at 14 (¶79)).  These statements are not direct evidence of discrimination, because these statements pertain to the alleged

racial animus of others, and there is no evidence that either Green, Thomas, or the special counsel had an objective basis for believing that the JRA defendants had a racial animus. *See Reilly v. TXU Corp.*, No. 06-11119, 271 F. App'x 375, 379 (5th Cir. Mar. 17, 2008). Furthermore, the alleged statements made by the special counsel and Green are not direct evidence of race discrimination or political discrimination, because neither race nor political affiliation are specifically mentioned in their alleged statements.

The Court has not located any other evidence produced by the plaintiffs that could potentially be viewed as direct evidence of discrimination. Therefore, the Court must consider whether there is circumstantial evidence of discrimination.

When no direct evidence of discrimination is produced, a plaintiff's claims are analyzed pursuant to the *McDonnell Douglas* burden-shifting framework. *Gaalla*, 460 F. App'x at 480. To state a prima facie case under this framework, the plaintiffs must prove: (1) they belong to a protected class; (2) they were qualified to perform the work; (3) they were subject to an adverse action; and (4) they were treated less favorably than others who were similarly situated. *See id.* It is only necessary for the Court to address the fourth element. The plaintiffs claim that they were treated differently from four other developers: (1) Transcontinental Realty Investors, (2) the developers of the Iron Horse Grill project, (3) the developers of the Farish Street Entertainment District project, and (4) Robinson Callen. However, the plaintiffs have not argued that these developers were similarly situated, nor have they presented any evidence tending to show that these

-9-

developers were similarly situated.  Since the plaintiffs have not produced evidence

that they were treated differently from other developers that were similarly

situated, they have not stated a prima facie case of either race discrimination or

political affiliation discrimination.  The defendants are entitled to summary

judgment as to the plaintiffs' § 1981 and § 1983 equal protection claims.

## III.  FIRST AMENDMENT RETALIATION

"The First Amendment prohibits not only direct limits on individual speech

but also adverse governmental action against an individual in retaliation for the

exercise of protected speech activities." *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th

Cir. 2002).  The Fifth Circuit has held that contractors who submit bids for

government projects can assert First Amendment retaliation claims.  *Oscar Renda

Contracting, Inc. v. City of Lubbock, Tex.*, 463 F.3d 378, 385-86 (5th Cir. 2006).  The

same elements required for retaliation claims asserted by public employees are also

required for claims asserted by contractors: (1) an adverse employment decision; (2)

speech that involves a matter of public concern; (3) speech that outweighs the

government's interest in promoting efficiency; and (4) a causal connection between

the speech and adverse action.  *Oscar Renda Contracting, Inc. v. City of Lubbock,

Tex.*, 577 F.3d 264, 271 (5th Cir. 2009).  "Once a plaintiff has met his burden of

showing that his protected speech was a substantial or motivating factor in the

defendant's adverse employment decision, a defendant may still avoid liability by

showing, by a preponderance of the evidence, that it would have taken the same

adverse employment action even in the absence of the protected speech." *Haverda v. Hays Cnty.*, 723 F.3d 586, 591-92 (5th Cir. 2013).  If the defendant meets its burden, the plaintiff must present evidence that the defendant's explanation is pretext for retaliation in order to prevail.  *Id.*

The plaintiff, Don Hewitt, claims that he made statements criticizing the bidding process for the Convention Center Hotel project.  He also criticized the fees that were proposed to be paid to the Mayor's political affiliates and consultants.  The plaintiffs claim that the defendants retaliated against Hewitt by refusing to fund ATBS's proposed Deposit Guaranty project.

The defendants argue that there was no adverse employment action with regard to the Deposit Guaranty project, because neither the JRA defendants nor the City defendants ever denied the defendants' proposal.  The JRA defendants merely postponed making a decision regarding the project after the Mayor expressed concern about the City's ability to loan funds for acquisition of properties.  The plaintiffs, however, claim that the JRA's delay caused them to lose their option to purchase the Deposit Guaranty building.

"Adverse employment actions are discharges, demotions, refusals to hire, refusals to promote, and reprimands." *Breaux v. City of Garland*, 205 F. 3d 150, 157 (5th Cir. 2000).  The plaintiffs first sought funding from JRA in mid-2011, but JRA has never granted or denied funding.  The Court finds that this "delay" of over three years constitutes an adverse employment action.

The defendants also argue that Hewitt's speech was not a matter of public

concern.  However, Judge Jordan has previously determined that Hewitt's statements "related to the bidding process for a $90 million government project easily [satisfy]" the public concern requirement.  (Order at 12, ECF No. 65).

The third factor requires courts to consider "the balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public service it performs . . . ."  *Jordan v. Ector Cnty.*, 516 F.3d 290 (5th Cir. 2008) (citing *Connick v. Myers*, 461 U.S. 138, 142 (1983)).  Courts consider:

> (1) the degree to which the employee's activity involved a matter of public concern; (2) the time, place, and manner of the employee's activity; (3) whether close working relationships are essential to fulfilling the employee's public responsibilities and the potential effect of the employee's activity on those relationships; (4) whether the employee's activity may be characterized as hostile, abusive, or insubordinate; (5) whether the activity impairs discipline by superiors or harmony among coworkers.

*Id.*  In essence, this test evaluates the amount of disruption caused by the plaintiff's speech.  *See id.*  In the present case, there is no evidence or assertion that Hewitt's speech caused disruption or prevented the defendants from performing their government functions.  As a result, the third factor, relating to government efficiency, is satisfied.

The final factor questions whether there is a causal connection between the speech and adverse action.  "Close timing between an employer's protected activity and an adverse action against [him] may provide the 'causal connection' required to make out a prima facie case of retaliation."  *Miles v. Beckworth*, No. 11-40407, 455

-12-

F. App'x 500, 504 (5th Cir. Dec. 28, 2011) (quoting *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997)).  "The causal connection prong . . . may also be satisfied when the plaintiff relies upon a chronology of events from which retaliation may plausibly be inferred."  *Mooney v. Lafayette Cnty. Sch. Dist.*, 538 F. App'x 447, 454 (5th Cir. Aug. 8, 2013) (citing *Brady v. Houston Indep. Sch. Dist.*, 113 F.3d 1419, 1424 (5th Cir. 1997)).  The Fifth Circuit has held that the issue of causation should rarely be resolved at the summary judgment stage of litigation. *Haverda*, 723 F.3d at 595-96.

The plaintiffs have alleged the following time-line of events related to their retaliation claim:  In March 2011, ATBS entered into an Option Agreement to purchase the historic Deposit Guaranty building located at 200 East Capital Street in Jackson.  (Pls.' Resp., Ex. A  at 11 (¶61), ECF No. 139-1).  It planned to convert the property into a 120 key hotel, thirty-three apartments, and 32,000 square feet of retail space.  (*Id.* at 11 (¶62)).  On May 6, 2011, the JRA's executive director sent a letter to the plaintiffs stating, "JRA offers its full and unquestionable support of the conversion of 200 East Capitol to a mixed use development."  (Pl.'s Resp., Ex. C, ECF No. 139-3).  The plaintiffs sought a $5,000,000 loan from JRA to cover the acquisition costs of the building.  (Pls.' Resp., Ex. A  at 12 (¶67)).  According to Hewitt, the Mayor stated that he would support the Deposit Guaranty project at a December 27, 2011 meeting.  (Pl.'s Resp., Ex. X at 4 (¶11), ECF No. 139-23).  On December 28, 2011, the JRA and ATBS entered into a Memorandum of Understanding pursuant to which the JRA proposed to use its best efforts to pursue

the issuance of bonds that would be used to fund the project.  (Am. Compl., Ex. E at 2-3, ECF No. 48-5).

In January and February 2012, Hewitt publicly criticized the City's handling of the proposals for the Convention Center Hotel project.  (*Id.* at 6-7 (¶¶35,37)).  In March 2012, the Mayor "expressed concerns . . . about the City's diminishing bonding capacity and growing debt obligations."  (JRA Defs.' Mot., Ex. I, ECF No. 125-9).  As a result of the Mayor's concerns, the JRA never made a decision regarding the Deposit Guaranty project, and ATBS's option to purchase the Deposit Guaranty building expired.  (JRA Defs.' Mot., Ex. J at 20-21, ECF No. 125-10).

The plaintiffs have produced evidence and testimony indicating that the position of the JRA defendants and the City defendants with regard to the Deposit Guaranty project may have changed within one to two months after Hewitt criticized the City's handling of the Convention Center Hotel proposals.  As a result, a genuine issue of material fact exists regarding whether a causal connection exists between Hewitt's speech and the adverse action.  Furthermore, the defendants have not demonstrated that they would have made the same decision in the absence of Hewitt's speech.  The defendants claim in argument that they did not know about Hewitt's criticisms, but they have not produced any affidavits or deposition testimony supporting this argument.  Therefore, the defendants' Motions for Summary Judgment are denied with regard to the plaintiffs' First Amendment retaliation claim.

## IV. CONSPIRACY

"Section 1985(3) prohibits conspiracies to deprive a person of equal protection of the laws or of equal privileges and immunities under the laws on the basis of race." *Jackson v. Biedenharn*, No. 10-30909, 429 F. App'x 369, 372 (5th Cir. June 20, 2011) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102-03 (1971)).  "To state a claim under 42 U.S.C. § 1985(3), a plaintiff must allege: (1) a conspiracy involving two or more persons; (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws; and (3) an act in furtherance of the conspiracy; (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States." *Hilliard v. Ferguson*, 30 F.3d 649, 652-53 (5th Cir. 1994).  Because the plaintiffs have not set forth a prima facie case that they were denied equal protection, their conspiracy claim must fail.  Furthermore, the conspiracy claim must be dismissed, because the plaintiffs have not produced evidence that the defendants entered into an agreement to deprive the plaintiffs of equal protection.  *See Jackson*, 429 F. App'x at 372 (citing *Green v. State Bar of Tex.*, 27 F.3d 1083, 1089 (5th Cir. 1994)).

The plaintiffs also attempt to assert a §1986 claim, but "[i]n the absence of a viable claim under § 1985, no claim under § 1986 will stand." *Flander v. Kforce, Inc.*, No. 12-20754, 526 F. App'x 364, 369 (5th Cir. Apr. 25, 2013).

## V. STATE LAW CLAIMS OF GROSS NEGLIGENCE AND TORTIOUS BREACH OF CONTRACT

The defendants argue that they are entitled to discretionary function

-15-

immunity as to the plaintiffs' state law claims.  The Mississippi Tort Claims Act

provides:

> A governmental entity and its employees acting within the course and
> scope of their employment or duties shall not be liable for any claim . .
> . [b]ased upon the exercise or performance or the failure to exercise or
> perform a discretionary function or duty on the part of a governmental
> entity or employee thereof, whether or not the discretion be abused.

Miss. Code Ann. § 11-46-9(1)(d).  The plaintiffs do not dispute that the defendants'

alleged acts with regard to the plaintiffs' proposed developments were discretionary,

but they argue that the defendants nevertheless had to act with ordinary care.  The

plaintiffs are incorrect.  The Mississippi Supreme Court has held that the ordinary

care standard does not apply to the determination of whether a governmental entity

is entitled to discretionary-function immunity.  *Miss. Transp. Comm'n v.*

*Montgomery*, 80 So.3d 789, 796 (¶24) (Miss. 2012).  A governmental entity is

entitled to immunity if a two-part public-function test is satisfied.  *Id.* at 795, 797

(¶¶ 19, 26).  Courts must first "ascertain whether the activity in question involved

an element of choice or judgment . . . . If so, [courts] also must decide whether that

choice or judgment involved social, economic, or political-policy considerations."  *Id.*

at 795 (¶ 19).

In the present case, the defendants' decisions regarding the plaintiffs'

proposals involved an element of choice.  Furthermore, these choices certainly

involved economic considerations.  Therefore, the defendants are entitled to

immunity and the plaintiffs' state law claims must be dismissed.

## VI.  MOTIONS TO STRIKE

The Court finds that the JRA defendants' Motions to Strike are moot.  The testimony and evidence that the JRA defendants have objected to would not have affected this Court's decision.  The Court recognizes that the JRA defendants objected to portions of paragraphs 62 and 67 of Irvin's affidavit, and portions of paragraph 11 of Hewitt's affidavit, but the Court has only referenced the portions of these paragraphs that were not objected to by the JRA defendants.

## CONCLUSION

For the foregoing reasons, the Court finds that the defendants are entitled to summary judgment as to the plaintiffs' substantive due process, equal protection, conspiracy, gross negligence, and tortious breach of contract claims.  The defendants are not entitled to summary judgment as to the plaintiffs' first amendment retaliation claim.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that the Motion for Summary Judgment [125] filed by Jason Brookins, Ronnie Crudup, Brian Fenelon, Jackson Redevelopment Authority, and Beau Whittington, Jr., and the Motion for Summary Judgment [127, 128] filed by the City of Jackson, Mississippi, and Harvey Johnson, Jr., are **GRANTED** as to the plaintiffs' substantive due process, equal protection, conspiracy, gross negligence, and tortious breach of contract claims, and **DENIED** as to the plaintiffs' First Amendment retaliation claim.  The plaintiffs' substantive due process, equal protection, conspiracy, gross negligence, and tortious breach of contract claims are hereby **DISMISSED WITH PREJUDICE**.  Only the

plaintiffs' First Amendment retaliation claim remains pending.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that the Motion to Strike Selected Exhibits [146] filed by the JRA defendants, the Motion to Strike Portions of Don Hewitt's Affidavit [148] filed by the JRA defendants, and the Motion to Strike Portions of Herbert J. Irvin's Affidavit [150] filed by the JRA defendants are **MOOT**.

**SO ORDERED AND ADJUDGED** this the 31[th] day of July, 2014.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
CHIEF U.S. DISTRICT JUDGE