**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION**


**ADVANCED TECHNOLOGY BUILDING
SOLUTIONS, LLC AND DONALD ("DON")
HEWITT**                                                    **PLAINTIFFS**

**V.**                                        **Cause No. 3:12cv389LG-JCG**

**CITY OF JACKSON, MISSISSIPPI;
JACKSON REDEVELOPMENT AUTHORITY;
JACKSON REDEVELOPMENT AUTHORITY EXECUTIVE
DIRECTOR JASON BROOKINS, IN HIS
OFFICIAL CAPACITY, ET AL.**                          **DEFENDANTS**


**CITY OF JACKSON'S MEMORANDUM IN SUPPORT OF
<u>MOTION</u> <u>FOR</u> <u>RECONSIDERATION</u>**

**COMES NOW**, the City of Jackson, by and through counsel and, pursuant to the

Federal Rules of Civil Procedure, files this its Memorandum in Support of its Motion for

Reconsideration, and in support thereof would show unto this Honorable Court the

following:

**INTRODUCTION**

Reconsideration is warranted in this matter because Plaintiffs failed to place

sufficient summary judgment evidence before this Court to demonstrate that the City of

Jackson took any adverse employment action against Plaintiffs in retaliation for speech

protected under the First Amendment.  Plaintiffs fail to make any allegations against the

City of Jackson that the Mayor and City Council acted in any retaliatory manner

regarding the financing process of the Deposit Guaranty building.   The Deposit

Guaranty project stalled at the JRA, therefore the Mayor and City Council never had the

opportunity to vet or veto the project.  It is factually impossible for the City of Jackson to

have taken an adverse action in retaliation of the Plaintiffs.  Further, there is absolutely no evidence to support this proposition.  Plaintiffs cannot produce any City Council minutes showing that the project was rejected, and Plaintiff Hewitt admitted in deposition that he did not have any evidence that the City of Jackson influenced JRA in any manner.  In fact, Hewitt clearly stated that he was "not blaming the City" in his deposition.

## RELEVENT FACTS ON RECONSIDERATION

Plaintiffs have alleged a number of nebulous claims concerning three different development projects in which they were interested.  The claims included a Fourteenth Amendment substantive due process claim, a Fourteenth Amendment equal protection claim based on political affiliation, a Fourteenth Amendment equal protection claim based on race, a First Amendment retaliation claim, a conspiracy claim and state law claims of gross negligence and tortious interference with contract.[1]  On July 31, 2014, this Court granted summary judgment on all claims except for the First Amendment retaliation claim.[2]  The First Amendment retaliation claim only relates to the proposed development of the Deposit Guaranty building.  The City of Jackson respectfully requests reconsideration of the Court's decision regarding the First Amendment retaliation claim, because it appears that the court overlooked certain undisputed facts in reaching the conclusion that there was sufficient evidence to create a jury question.  Specifically, there is no evidence before this Court that demonstrates that the City of Jackson took an adverse action against the Defendants in retaliation for alleged derogatory speech.

---

[1]*See* Docket No. 48, Amended Complaint.
[2]*See* Docket No. 159.

## STANDARD OF REVIEW

A denial of summary judgment constitutes an interlocutory order under Federal Rule of Civil Procedure 54(b), which courts "may reconsider and reverse any time before entering final judgment." *See Millar v. Houghton*, 115 F.3d 348, 350 (5th Cir. 1997). Under Rule 54(b), a court may grant a party's reconsideration motion "'for any reason it deems sufficient.'" *United States v. Renda*, 709 F.3d 472, 479 (5th Cir. 2013) (quoting *Saqui v. Pride Cent. Am., LLC*, 595 F.3d 206, 210-11 (5th Cir. 2010)). Unlike reconsideration motions brought after final judgment under Rules 59 and 60, reconsideration of interlocutory orders may be granted "even in the absence of new evidence or an intervening change in or clarification of substantive law." *See Saqui*, 595 F.3d at 210-11 (quoting *Lavespere v. Niagara Mach. & Tool Works, Inc*., 910 F.2d 167, 185 (5th Cir. 1990), *overruled on other grounds by Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir. 1994)). District courts within the Fifth Circuit often consider and grant such motions. *E.g., Glenn v. Imperial Palace of Mississippi, LLC,* 2013 WL 3712429 (S.D. Miss. 2013); *Employers Mut. Cas. Co. v. Normmurray Springs Bottled Water Co., Inc*., 2010 WL 3001226, *1 (N.D. Miss. 2010).

## ARGUMENT

### I. Plaintiff failed to provide sufficient summary judgment evidence to demonstrate a causal connection between the alleged adverse action and Plaintiffs' speech.

This Court allowed the First Amendment claim to survive summary judgment, finding that there were genuine issues of material facts as to whether a causal

connection exists between Hewitt's speech and the alleged adverse action.  Specifically, this Court held that there are questions of fact as to:  (1) whether the City would have made the same decision in absence of Hewitt's speech, and (2)  whether the City knew of Hewitt's alleged derogatory speech.   As Co-Defendants' JRA assert, it is not the Defendants' burden to demonstrate this causal connection between the adverse action and the alleged retaliation; rather, the burden is on the Plaintiff.  *See **Thomas v. Barton Lodge II, Ltd.,*** 174 F.3d 636 (5th Cir. 1999).  Additionally, the Fifth Circuit has held that a plaintiff's own belief that the speech was a substantial or motivating factor is, by itself, insufficient to meet the standard required for the retaliation claim to survive a motion for summary judgment. ***Whiting v. Univ. of S. Miss***., 451 F.3d 339, 351 (5th Cir.2006).  There is no proof before this Court in any of the affidavits, in Don Hewitt's testimony, in any of the documents produced by the Plaintiffs, or in the documents produced by any other party that demonstrates that the City Council was aware of Hewitt's alleged derogatory speech and that the City Council acted in a retaliatory manner.

The United States Supreme Court recently clarified the standard of causation for retaliation claims in ***Univ. of Tex. S.W. Med. Ctr. v. Nassar***, 133 S. Ct. 2517, 186 L. Ed. 2d 503 (2013). The Court held that a plaintiff making a Title VII, § 2000e-3 retaliation claim "must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer." ***Nassar***, 133 S. Ct. at 2534. The plaintiff's participation in the protected activity must be the reason that the employer decided to act — in other words, the "desire to retaliate [must be] the *but-for cause* of the employer's adverse decision." *See id*. at 2527-28 (emphasis added). Here, in order to survive summary judgment, Plaintiffs must present evidence from which a reasonable

jury could find that the City of Jackson decided to persuade the JRA not to allow Plaintiffs to go forward with the financing process in retaliation for his alleged repeated complaints of the handling of the TCI hotel project. *See id*; ***Donald v. Portillo's Hot Dogs, Inc.***, No. 9-7436, 2013 U.S. Dist. LEXIS 103667, 2013 WL 3834402, at *13 (N.D. Ill. July 24, 2013) (citing ***Nassar***).  Plaintiffs have not produced any evidence that the City of Jackson knew of the alleged derogatory protected speech and retaliated.   In fact, Plaintiff has yet to articulate what actions the City of Jackson has taken to retaliate against them.

### A. Plaintiffs fail to make any allegations against the City of Jackson of an adverse action or retaliation.

Plaintiffs' allegations seem to suggest that because former Mayor Johnson was concerned about the front end lending of monies for projects, which ultimately resulted in the inability to obtain a loan to purchase the Deposit Guaranty building, that the City is somehow liable.  This is factually and statutorily impossible.  The Plaintiffs seem to believe that the Mayor has sole financial control over the loans and bonds that are issued to developers; however, this is completely inaccurate.   The Mayor has no authority to issue bonds or control any funding whatsoever.  To phrase it differently, the Mayor does not "hold the purse strings" for the City of Jackson.  The City Council holds that power. More importantly, Johnson has been dismissed individually, and there are no allegations against the City, itself, that its decisions resulted in an adverse action against the Plaintiff that would arise to the level of retaliation under the First Amendment.

The City of Jackson operates under a "commission" form of government, which means that the City is governed by the City Council each of whom have the right to vote on all issues before the council.  Miss. Code Ann. § 21-5-3.  There are two important points to this issue:  1) Plaintiffs have failed to place sufficient, reliable summary judgment evidence before this Court that the City made an adverse decision in retaliation of Plaintiffs' alleged derogatory speech; and 2) Plaintiffs have failed to demonstrate that the Deposit Guaranty bonding issue was placed before the City Council to allow the City to make the alleged adverse decision.  Simply put, it never made it that far.  The decision for funding the Deposit Guaranty Building stalled in the finance division of JRA, which is a separate and distinct entity from the City of Jackson.  Should it have passed at the JRA, the Deposit Guaranty project would have come before the City Council for a vote.  This never happened.  Therefore, it is *factually impossible* for the City of Jackson to have made an adverse action because the issue was never presented to the City Council.  Plaintiffs have not, and cannot present any evidence otherwise.

### B. The affidavit of Herb Irvin is insufficient summary judgment evidence to create a genuine issue of material fact against the City.

Further, this Court relied heavily upon the affidavit of Herb Irvin in allowing Plaintiffs' First Amendment retaliation claim to survive summary judgment.  However, Mr. Irvin's affidavit fails to make any allegations against the City of Jackson.    For example, Paragraph 48 of the affidavit alleges that the reason ATBS "wasn't given a chance" to make a proposal was because Johnson and the JRA board members did not like Hewitt.  [Docket No. 135-1, ¶48].  Irvin makes no reference to the City Council or

the City itself.  Irvin's statement fails to establish that 1) Hewitt was denied by the City of Jackson because of his speech; and 2) that the City of Jackson took an adverse action. The only mention of the "City" in the affidavit are hearsay statements made by former Director of Planning and Economic Development, Harold Lathon, and these alleged statements were made in 2014, which is *two years* after the alleged adverse action was taken regarding the Deposit Guaranty Building.   So, any part of Irvin's affidavit regarding Harold Lathon is irrelevant and insufficient summary judgment evidence.

There are parts of the affidavit that are dedicated to the Deposit Guaranty project (See Exhibit "A," ¶¶ 84-118).  However, in every reference made to the Deposit Guaranty project, there is not one allegation made against the City.  In Paragraph 84, Irvin states that ten days before ATBS's option to purchase the Deposit Guaranty Building was set to expire, Jason Brookins announced that he met with the Mayor, and the Mayor stated that "the rules of the game have changed," meaning that he  did not want to fund the project. [Docket No. 135-1, ¶84].  As discussed, *supra,* the Mayor does not control the funding for the City of Jackson, so it is factually and statutorily impossible for the Mayor to quash a project.   Irvin seems to acknowledge this fact and admits that the City of Jackson had nothing to do with any decision regarding the Deposit Guaranty building in his affidavit.  In Paragraph 87,  Irvin states that "it was not the mayor's call, but it was the JRA Finance Committee's call and that it had a duty and an obligation to complete its charge and vote the project out of committee." [Docket No. 135-1, ¶87].  So, in Irvin's own words, the Deposit Guaranty project never had the opportunity to appear before the City Council, and the City of Jackson never had the opportunity to vote on the issue. Thus, it is factually and legally impossible for the City of Jackson to be liable in this matter because there was not an adverse action taken by the City.   Plaintiffs cannot

produce any competent summary judgment evidence to demonstrate that the City retaliated against them based on speech.

Finally, in Paragraph 93, Irvin states that Harvey Johnson expressed his lack of interest in the project "and vetoed" the project. [Docket No. 135-1, ¶93]. Again, Irvin fails to state any allegation against the City Council or the administration, and it is a known fact that the Mayor cannot summarily veto a project; rather, the project must be presented to the City for action by the City Council. It is axiomatic that a city can only speak through its minutes, and there is absolutely no proof that this matter came before the City Council. There is no order from the City Council denying the project, nor are there any minutes stating that the project was presented and voted upon by the City Council. There is certainly not any sworn testimony from any witness that the City of Jackson took an adverse action against Plaintiffs in retaliation of Plaintiffs' speech. For this reason, Plaintiff cannot survive summary judgment.


### C. Plaintiff Hewitt testified that he does not have any evidence of retaliation against the City.

On April 8, 2014, Plaintiff Don Hewitt was deposed in this matter. In his deposition Hewitt acknowledged that ATBS never completed a development project, and the only reason this lawsuit was filed was to put pressure on the JRA and the Mayor to "do the right thing." (Exhibit "A," pg. 213, lines 9-16, pg. 225, lines 3-9.) That is the basis for this lawsuit. Hewitt does not have sufficient summary judgment evidence against the City of Jackson that demonstrates a cognizable claim for First Amendment retaliation. When questioned about the Deposit Guaranty project, Hewitt acknowledges

and admits that the project never made it out of the JRA finance process and never made it to the City of Jackson so that it could be voted upon:

> Q:    200 East Capitol [Deposit Guaranty Bank].  Same two questions.  Are you saying that Harvey Johnson somehow, individually, stopped your 200 East Capitol project because of race:  Are you saying that?
>
> A:    I'm saying it was based on retaliation.
>
> Q:    Retaliation for what?
>
> A:    Based on stopping the convention center hotel project.
>
> Q:    Did you stop the convention center hotel project?
>
> A:    Well, they got – they both got denied.
>
> Q:    I understand that.  Did you stop the convention center hotel project?
>
> A:    JRA stopped it.
>
> Q:    Okay.  I thought I remembered that, but maybe you knew something I didn't.  JRA decided to reject both convention center hotel proposals, correct?
>
> A:    Yes.
>
> *Q:    And those proposals then never made it across the street to the city council, for the City Council to vet and vote, correct?*
>
> *A:    I think, yes.*

(Exhibit "A," pgs 253-254) (emphasis added).

More importantly, when questioned by the City of Jackson's attorney as to whether he had any evidence against the City for retaliation, Mr. Hewitt had the same response:

> Q:    So the Mayor never – well, you're not blaming the city, then, for telling the JRA not to do any particular project.
>
> A:    *Not blaming the city.*
>
> Q:    Let me ask it another way.  You don't have any other –

MR. TEEUWISSEN:  That was a good question.

Q:      (By Mr. Alkebu-Lan)  Go ahead and answer.

A:      The answer would be no.  We felt like the city should have – when expressed a concern that we were not being treated fairly, that the city Council would have investigated it to see what we could do to kind of get the project back on track, but that didn't happen.

Q:      I got you.  The city – you don't have any evidence that the city told JRA not to do a particular project?

MR. NORRIS:  Object to the form, but you can answer the question to the best of your knowledge.

THE WITNESS:        Do I have any –you've got

Q:       (By Mr. Alkebu-Lan)  Sure.  Do you have or know of any evidence that the city instructed JRA not to do any particular project?

A:      *No, I don't know of any evidence.*

(Exhibit "A," pgs 279-80) (emphasis added).

So, by the Plaintiff's own testimony, he is not alleging that the City told JRA not to do a project, and he does not have any evidence that City instructed JRA not to do a project.  That is the crux of Plaintiffs' Complaint, yet Mr. Hewitt testified that he has no evidence to support this allegation.  Mr. Hewitt's nebulous allegations against the City seem to be that he wanted the City Council to conduct an investigation as to the alleged retaliatory behavior.  This is simply insufficient to survive summary judgment evidence, and no reasonable fact finder will find an adverse action was taken by the City of Jackson in retaliation for Mr. Hewitt's alleged speech.  Again, the Fifth Circuit has held that a plaintiff's own belief that the speech was a substantial or motivating factor is, by itself, insufficient to meet the standard required for the retaliation claim to survive a motion for summary judgment.  *See **Whiting**,* 451 F.3d at 351.  For these reasons, the

City of Jackson requests that this Court grant this Motion for Reconsideration and award the City summary judgment as a matter of law.

## CONCLUSION

The City of Jackson requests that this Court reconsider its decision denying summary judgment as to the First Amendment retaliation claims.  Plaintiffs have not placed any evidence before this Court that the City took any adverse actions against them in retaliation for their speech.  Plaintiffs cannot demonstrate that the Deposit Guaranty project came before the City Council.  Thus, it is impossible for the City to have taken any action, whatsoever, regarding the Deposit Guaranty building.  Furthermore, the affidavit of Herb Irvin fails to state that the City of Jackson acted in retaliation, and Plaintiff Hewitt admitted that he did not have any evidence that the City influenced JRA in its decision-making process.  For these reasons, the City requests that this Court grant summary judgment as a matter of law.

RESPECTFULLY submitted this the 22nd day of August, 2014.

DEFENDANT CITY OF JACKSON

BY:   /s/ Claire Barker
CLAIRE BARKER, MSB # 101312
DEPUTY CITY ATTORNEY
GAIL LOWERY, MSB #1460
SPECIAL ASSISTANT TO THE CITY ATTORNEY

**OF COUNSEL:**

**OFFICE OF THE CITY ATTORNEY**
455 East Capitol Street
Post Office Box 2779
Jackson, Mississippi  39207-2779
Office:       601-960-1799
Facsimile:    601-960-1756

**CERTIFICATE OF SERVICE**

I, Claire Barker, one of the attorneys for the defendant, hereby certify that I have transmitted via Electronic Filing, a true and correct copy of the above and foregoing Entry of Appearance to the following:

Louis H. Watson, Jr.                           Pieter Teeuwissen
Robert Nicholas Norris                         Simon & Teeuwissen, PLLC
LOUIS H. WATSON, JR.,PA                         Post Office Box 16787
628 North State Street                         Jackson, Mississippi 39236-6787
Jackson, Mississippi 39202
*Attorneys for Plaintiffs*

Fred L. Banks, Jr.
Benjamin Lyle Robinson
Latoya C. Merritt
PHELPS DUNBAR, LLP-Jackson
Post Office Box 16114
*Attorneys for Defendant Jackson*
*Redevelopment Authority*

**SO CERTIFIED,** this the 22nd day of August, 2014.

/s/ Claire Barker
CLAIRE BARKER