IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

ADVANCED TECHNOLOGY BUILDING
SOLUTIONS, LLC, and DONALD HEWITT                    PLAINTIFFS

v.                                          CAUSE NO. 3:12CV389-LG-JCG

CITY OF JACKSON, MISSISSIPPI                          DEFENDANT

### MEMORANDUM OPINION AND ORDER GRANTING THE CITY'S MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT

Following a jury verdict in favor of Advanced Technology Building Solutions and Donald Hewitt (hereafter collectively referred to as "ATBS"), the City of Jackson, Mississippi filed their Motion for Judgment Notwithstanding the Verdict [189].[1] ATBS filed a response in opposition to the Motion, and the City filed a reply. Because the Plaintiff failed to present any evidence that the City of Jackson, through its duly elected City Council, committed an "adverse action" the Court finds that the City's Motion should be granted.

## BACKGROUND

ATBS filed this First Amendment retaliation lawsuit against the City of Jackson after it was unable to obtain funding for an urban redevelopment project. After a four day trial, a jury awarded damages in the amount of $600,000 to ATBS. The City has filed the present Motion for Judgment Notwithstanding the Verdict, asserting that its policymaker, the City Council, never had the opportunity to decide whether to grant funding to ATBS, because ATBS's request for funding

---

[1]The Court construes the Motion as a Rule 50(b) Motion for Judgment as a Matter of Law. *See* Fed. R. Civ. P. 50(b).

stalled while under consideration by a separate entity, the Jackson Redevelopment

Authority (JRA).[2]

# DISCUSSION

A motion for judgment notwithstanding the verdict must be treated as a

renewed motion for a judgment as a matter of law filed pursuant to Fed. R. Civ. P.

50. *Smith v. Louisville Ladder Co.*, 237 F.3d 515, 525 n.2 (5th Cir. 2001). A motion

for judgment as a matter of law should be granted "if the facts and inferences point

so strongly and overwhelmingly in favor of the moving party that reasonable jurors

could not arrive at a contrary verdict." *Homoki v. Conversion Servs.*, 717 F.3d 388,

395 (5th Cir. 2013). All evidence must be considered in the light most favorable to

the party opposed to the motion and all reasonable inferences must be drawn in

favor of the nonmoving party. *Id.* The court cannot make credibility

determinations or weigh the evidence. *Id.*

At trial, the only claim pending in this lawsuit was a First Amendment, free

speech retaliation claim brought pursuant to 42 U.S.C. § 1983.

> To establish a First-Amendment, free-speech retaliation claim under §
> 1983, a public employee must show that (1) she suffered an adverse
> employment action; (2) her speech involved a matter of public concern;
> (3) her interest in commenting on matters of public concern
> outweighed the defendant's interest in promoting workplace efficiency;
> and (4) her speech was a substantial or motivating factor in the

---

[2]The JRA was created as an urban renewal agency pursuant to Miss. Code
Ann. § 43-35-33. *See also Jackson Redevelopment Auth. v. King, Inc.*, 364 So. 2d
1104, 1109 (Miss. 1978).

defendant's adverse employment action.

*Burnside v. Kaelin*, No. 13-41344, 2014 WL 6913938 at *2 (5th Cir. Dec. 9, 2014)

(citing *Depree v. Saunders*, 588 F.3d 282, 286-87 (5th Cir. 2009)).  Although the

Fifth Circuit has never directly addressed whether contractors who seek public

funding of projects are permitted to file First Amendment retaliation claims, it has

held that contractors who submit bids for government projects can assert First

Amendment retaliation claims.  *Oscar Renda Contracting, Inc. v. City of Lubbock,*

*Tex.*, 463 F.3d 378, 385-86 (5th Cir. 2006).[3]

In its Motion for Judgment Notwithstanding the Verdict, the City argues

that ATBS did not prove that the City committed an adverse action, because its

policymaker, the Jackson City Council, never had the opportunity to determine

whether to grant ATBS's request for urban redevelopment funding.  "Municipal

liability under section 1983 requires proof of three elements: a policymaker; an

official policy; and a violation of constitutional rights whose 'moving force' is the

policy or custom."  *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)

(quoting *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978)).  The

determination regarding whether an entity or official has policymaking authority is

a question of law for the court.  *Tharling v. City of Port Lavaca*, 329 F.3d 422, 427

(5th Cir. 2003).  This determination is governed by state law.  *Raymond v. Ector*

---

[3] The City has never raised nor argued that ATBS cannot assert a First
Amendment retaliation claim because it was neither a public employee nor a
prospective government contractor.

*Cnty. Tex.*, No. 12-50568, 507 F. App'x 347, 350 (5th Cir. Jan. 10, 2013). "Because it requires an official policy promulgated by an authorized policymaker, '[m]unicipal liability cannot be sustained under a theory of respondeat superior.'" *Raymond*, 507 F. App'x at 349 (quoting *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003)). "[P]olicymaking authority may be granted directly by a legislative enactment or may be delegated by an official who possesses such authority." *Id.*

> Special difficulties can arise when it is contended that a municipal policymaker has delegated his policymaking authority to another official. The authority to make municipal policy is necessarily the authority to make final policy. The fact that a municipal employee exercises discretion in making decisions is not enough to establish policymaking authority. Furthermore, the fact that the official policymaker simply goes along with a subordinate's discretionary decisions is not a delegation of policymaking authority. The Supreme Court has precluded the possibility of finding a county employee to possess de facto policymaking authority. However a different situation arises where a particular decision by a subordinate was cast in the form of a policy statement and expressly approved by the supervising policymaker. Also a series of decisions by a subordinate official could constitute "custom or usage" of which the supervisor must have been aware.

*Flores v. Cameron Cnty., Tex.*, 92 F.3d 258, 269 (5th Cir. 1996) (internal citations and quotation marks omitted). In *Flores*, the Fifth Circuit held that a county's chief probation officer was not the final policymaker with respect to personnel training policies at a juvenile detention center even though there was evidence that the officer actually established the detention center's policies, because there was no evidence that policymaking authority was delegated to the officer. *Id.* at 269. The Court held that, at most, the officer was a de facto policymaker, which was

insufficient to establish that he was delegated final official policymaking authority. *Id.* at 270.

The City of Jackson has adopted the mayor-council form of government. Pursuant to Miss. Code Ann. § 21-8-9, Jackson's City Council exercises the City's legislative power. "The mayor may attend meetings of the [city] council and may take part in discussions of the council but shall have no vote except in the case of a tie on the question of filling a vacancy in the council, in which case he may cast the deciding vote." Miss. Code Ann. § 21-8-17(3). The Mayor has the authority to veto City ordinances, subject to a two-thirds override by the City Council. Miss. Code Ann. § 21-8-17(2). The Mississippi Attorney General has opined that "[t]he city council is vested with the power to control the municipal purse strings and is charged with appropriating funds through the adoption of a budget." *McLemore*, No. 2009-00020, 2009 WL 367682 (Miss. A.G. Jan. 30, 2009). Consequently, the Jackson City Council had final policymaking authority to ultimately grant or refuse funding to ATBS. Under Mississippi law the City Council only speaks through its minutes, and its "actions are evidenced solely by entries on [its] minutes." *See Lange v. City of Batesville*, 972 So. 2d 11, 18 (¶9) (Miss. Ct. App. 2008). The Court therefore instructed the jury that the City Council was the final policymaker and that the City Council could only speaks through its minutes.

In its response to the instant Motion, ATBS argues that the Mayor was the final policymaker, because "[t]he City's ability to issue bonds and public financing constitute[s] an executive action and falls solely under the purview of the Mayor."

(Resp. at 2, ECF No. 196). However, ATBS has not presented any legal authority, testimony, or evidence that supports this assertion. Moreover, at trial, there was no evidence of records or minutes of the Jackson City Council, as the policy making authority for the City of Jackson, tending to show that the City Council denied funding to ATBS or delegated its policymaking authority to the Mayor. Although ATBS presented testimony that the Mayor has discretion over what items to put on the City Council's agenda, ATBS presented no testimony or evidence that the final policy decision regarding a grant of funding would be made by solely by the Mayor. In fact, the testimony presented at trial indicated that final decisions are made by the City Council after presented for consideration by the Mayor. This fact is conceded in ATBS's response. (Resp. at 3 (¶196), ECF No. 196). Testimony that the Mayor may have had some discretion or made some decisions regarding the issuance of funding is insufficient to demonstrate that he was the final policymaker. *See Flores*, 92 F.3d at 269.

The bulk of Plaintiff's evidence at trial centered around the individual conduct of the Mayor and his communications with the director and individual members of the JRA. ATBS's contention that the City of Jackson should be held liable for the Mayor's actions because a separate entity, the JRA, may have delegated some authority to the Mayor is without merit. The Major's interaction with the JRA director and the JRA board members, no matter how those actions are characterized, cannot bind the City of Jackson without the approval of the Jackson

City Council.[4]  As explained previously, the City cannot be held liable for the

Mayor's individual actions merely on the basis of respondeat superior.

Finally, ATBS has attempted to classify its request to the City as a request

for a contract in an attempt to demonstrate that the Mayor had final policymaking

authority.  However, the testimony and evidence presented at trial shows that

ATBS did not request a contract, it requested funding for a project, which required

authorization by the Jackson City Council.

## CONCLUSION

Because the City Council never decided to deny ATBS's request for funding,

ATBS cannot demonstrate that the City of Jackson, through official policy or act,

committed an adverse action.  An adverse action by the City of Jackson is a

essential element of a First Amendment retaliation claim, and absent such proof

the jury's verdict in this matter must be set aside.  For the foregoing reasons, the

Court finds that the City of Jackson is entitled to judgment as a matter of law.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that the Motion for

Judgment Notwithstanding the Verdict [189] filed by the City of Jackson,

Mississippi, is **GRANTED**.  A separate judgment will be entered pursuant to Fed.

R. Civ. P. 58.

---

[4]The only trial evidence showed that the consideration, granting or refusal of the grant requests by ATBS were all actions taken before the JRA.  Any confusion relating to the liability of these separate and independent entities (the JRA and the City of Jackson) was exacerbated by repeated references at trial to both as "the City."

**SO ORDERED AND ADJUDGED** this the 2nd day of January, 2015.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
CHIEF U.S. DISTRICT JUDGE